UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br><br> v. <br><br> SHAAN TI DIYALI <br> Defendant. | CRIMINAL NO. 5:22-CR-45-KKC-EBA-1 <br><br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

A jury found defendant Shaan Ti Diyali guilty of one count of wire fraud in violation of 18 U.S.C. § 1343 for defrauding the government with regard to a loan provided by the Small Business Administration ("SBA"). He now moves for a judgment of acquittal or new trial under Federal Rule of Criminal Procedure 29 (DE 42.)

Diyali has a "very heavy burden" on his motion for judgment of acquittal. *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016). The question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Importantly, the Court must "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998). The Court will "reverse a judgment for insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Vichitvongsa*, 819 F.3d at 270 (quoting *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013)). "'Substantial evidence' is 'such relevant evidence as a reasonable mind might accept to

support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *Id*. (quoting *United States v. Taylor*, 800 F.3d 701, 711 (6th Cir. 2015)). This Court cannot "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. Mathis*, 738 F.3d 719, 735 (6th Cir.2013).

The evidence at trial established that, in March 2020, the CARES Act was enacted in response to the COVID-19 pandemic. Among other measures, the CARES Act appropriated a large amount of money to the Small Business Administration to fund Economic Injury Disaster Loans (EIDL) for eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. The applicant was advised that the funds could be used only for legitimate business expenses that could not be met as a result of COVID-19 such as rent, material costs, and payroll. On the application, the applicant had to indicate the business's gross revenues for 12 months prior to the disaster. Because the loans were urgently needed by businesses, the SBA relied largely on what the applicant put on the application without requesting supporting documents.

The government presented evidence that, on May 9, 2020, Diyali applied for an EDIL loan for an insurance brokerage called Your Choice Services, LLC, even though the company had no significant business expenses, or even any business activity. Diyali represented on his loan application that the company had business income in the amount of $100,000 during the 12 months preceding the disaster, when in fact, it had no income that year. The company had no business at all. Based on Diyali's application, he received a loan of $49,900, which he deposited in his personal bank account. He invested most of those funds in Robin Hood, which is a company that allows

investors to trade and purchase cryptocurrency and stock. Diyali ultimately lost almost all of the loan money

This was sufficient evidence for at least one rational juror to find Diyali guilty of wire fraud beyond a reasonable doubt and that he did not act in good faith.

In his motion, Diyali argues that the government failed to prove that he intended to deprive the SBA of money. To support this argument, he first points to his own testimony regarding certain matters, including that a friend of his actually applied for the loan, not Diyali. There was ample evidence from which the jury could find that Diyali applied for the loan himself. The application contained a lot of intimate detail about Diyali's life, including his address, phone number, social security number, bank routing number, and bank account number. Moreover, the government presented evidence that the loan documents contained Diyali's electronic signature and that a company certified that the document was signed using Diyali's e-mail account. Most importantly, however, the government presented uncontradicted evidence that the money from the loan went into Diyali's personal bank account, and Diyali conceded he was the person who spent the money.

Diyali also argues that, at the time of the trial, the loan was not yet due for repayment. He argues that, without proof that he had defaulted on the loan, the government could not establish an intent to deprive the SBA of money. The Sixth Circuit has previously rejected a similar argument that a defendant cannot intend to deprive an entity of money if he intends to repay it. "While an honest, good-faith belief in the truth of the misrepresentations may negate intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no defense at all." *United States v. Daniel*, 329 F.3d 480, 488 (6th Cir. 2003) (quoting *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir.1986)). "It is sufficient that the defendant by material misrepresentations intends the victim to accept a substantial risk that otherwise would not have been taken." *Id*. This requires

proof only that Diyali intended to deprive the SBA of money "in the short-term." *Id*. Diyali's acceptance of the loan proceeds and subsequent spending of them is sufficient evidence of an intent to deprive the SBA of the funds at least for the short term.

Diyali argues that the government improperly pointed out at trial that, in pre-indictment discussions with the government, Diyali never asserted that another person applied for the loan in Diyali's name as he asserted at trial. Diyali argues that this violated his constitutional right to remain silent when questioned by law enforcement officers.

The Fifth Amendment to the U.S. Constitution grants individuals the right not to be compelled to incriminate themselves. To safeguard that right, the Supreme Court has required that a person taken into custody or otherwise deprived of his freedom "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

The Fifth Amendment also prohibits the prosecution from commenting during trial on the silence of a defendant who asserts the right to remain silent. *Jenkins v. Anderson*, 447 U.S. 231, 235 (1980) (citing *Griffin v. California*, 380 U.S. 609, 614 (1965)). It also precludes "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda warnings*." *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). This is because an arrestee's silence after receipt of *Miranda* warnings may be nothing more than an exercise of the rights explained in the warnings. Thus, the meaning of the defendant's silence is not probative, but instead "insolubly ambiguous." *Id*. at 617. Further, it would be "fundamentally unfair" for the state to offer implicit

4

assurances in the *Miranda* warnings that a defendant's silence will not penalize him, but then use the subsequent silence to impeach his testimony at trial. *Id* at 619-20.

There are a couple of problems with Diyali's argument that his right against self-incrimination was violated in this case. First, he does not assert that he was ever arrested and given *Miranda* warnings. The government asserts he was not, and there is no contradictory evidence in the record. The Supreme Court has held that the Fifth Amendment does not prohibit the prosecution from using for impeachment purposes the defendant's silence prior to his arrest and prior to his receiving *Miranda* warnings. *Jenkins v. Anderson*, 447 U.S. 231, 238–240 (1980). This is because using the defendant's silence prior to receiving the *Miranda* assurances does not present the same "fundamental unfairness" as does the use of the defendant's silence after he has received those assurances. *Id*. *See also Greer v. Miller*, 483 U.S. 756, 763 (1987) (Stating that, if a defendant has not received the *Miranda* assurances, "the Constitution does not prohibit the use of a defendant's postarrest silence to impeach him at trial.") Thus, any use of Diyali's silence prior to the trial would not violate the Constitution because he was never given *Miranda* assurances.

A second problem with Diyali's argument is that the government could not have been using Diyali's *silence* against him because he was not silent. He spoke with the government prior to trial, and he testified at trial. What the government used against Diyali was not his *silence* but his *statements* prior to trial. It was Diyali's lawyer that first raised questions about those statements. (DE 44, Tr. at 19.) On cross examination, the government pointed out that, in his discussions with the government and with his bank prior to trial, Diyali never claimed that another person applied for the loan. Instead, Diyali and his counsel attempted to show the government that Diyali and his wife together made $100,000 in personal income during the year the application asked about and that Diyali's representation on the application that his company made that amount was a simple

5

misunderstanding. Thus, the government was not pointing out Diyali's silence, but instead a prior inconsistent statement. The Fifth Amendment does not prohibit prosecutors from using the defendant's statements against him. *Anderson v. Charles*, 447 U.S. 404, 408 (1980).

For all these reasons, the Court hereby ORDERS that Diyali's motion for a judgment of acquittal or for a new trial under Rule 29 (DE 42) is DENIED.

This 4th day of November, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY